GUSTAVUS F. BENTRUP, TRUSTEE IN BANKRUPTCY OF GOLDEN EAGLE RESTAURANT COMPANY, A CORPORATION, APPELLANT, v. ALBERT E. JOHNSON AND SEARS LEHMANN, RESPONDENTS.*—14 S. W. (2d) 537.

St. Louis Court of Appeals. Opinion filed March 5, 1929.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2647, p. 726, n. 17; Bankruptcy, 7CJ, section 282, p. 178, n. 79; section 284, p. 182, n. 11; section 391, p. 250, n. 27; section 415, p. 262, n. 82; Chattel Mortgages, 11CJ, section 13, p. 409, n. 82; section 263, p. 568, n. 11; Equity, 21CJ, section 118, p. 137, n. 24; Estoppel, 21CJ, section 111, p. 1111, n. 30; Interpleader, 33CJ, section 7, p. 424, n. 77; section 25, p. 444, n. 88; section 31, p. 449, n. 75; section 63, p. 468, n. 14; Judgments, 33CJ, section 88, p. 1145, n. 84.

*Stern & Burnett* for appellant.

*Lehmann & Lehmann* for respondent.

BECKER, J.—This action arose out of a dispute between plaintiff and the defendant Johnson, each of whom claimed ownership of certain chattels which, under a written stipulation between plaintiff and said defendant, were sold and the resulting proceeds of such sale placed in the hands of defendant Lehmann to await the determination of said disputed question of ownership. Plaintiff's third amended petition out of which this appeal arises, is a bill in equity in the nature of a bill of interpleader. After a hearing a decree and judgment was entered dismissing plaintiff's petition, and in due course plaintiff appeals.

Plaintiff filed his original petition as a bill in equity but the trial judge, in an equity division of one of the circuit courts of the city of St. Louis, ruled that if plaintiff had a cause of action it was at law. Thereupon plaintiff filed his (first) amended petition, in which plaintiff sought a money judgment against both of the defendants, and a jury trial was had. Plaintiff, at the close of his case, voluntarily dismissed as to the defendant Lehmann, and the jury returned a verdict in favor of plaintiff in the sum of $2376.43 against the defendant Johnson. From the resulting judgment the defendant Johnson appealed.

This court on said appeal (see 287 S. W. 877) held that plaintiff's cause of action, if any, was not at law but in equity, and reversed the judgment and remanded the cause with leave to plaintiff to amend his bill if so advised. In the course of the opinion, adverting to our reason for remanding the cause, we stated that the allegations of plaintiff's petition might well support an action in the nature of an interpleader upon the necessary amendment as to parties, and as to the prayer for relief. In conformity with the above observation plaintiff filed a second amended petition in which he again made Lehmann a party defendant and incorporated all of the allegations in the body of his (first) amended petition but changed the prayer therein. Later plaintiff filed a third amended petition which differs from the second only in its prayer.

To this third amended petition defendant Lehmann filed a demurrer and the defendant Johnson filed a motion to strike out on the ground of departure. Both of these motions were overruled; thereupon each defendant filed a general denial. Finally on these pleadings the case was heard in an equity division of the said circuit court and at the conclusion of the trial the court dismissed plaintiff's bill. In the written memorandum of the trial judge dismissing the bill we note the following language:

"I do not know whether I should treat this as a bill in equity and dismiss it, or permit the plaintiff to proceed upon the original bill filed. However it seems to me that a suit in reversion (undoubtedly a

clerical error for conversion) might accomplish what is desired and what will have to be, and that is, a jury trial. Bill dismissed.''

After filing motions in arrest and for a new trial the plaintiff brings this appeal.

Said third amended petition upon which the present case was tried, and out of which the present appeal arises, is as follows:

''That at all times herein mentioned, the Golden Eagle Restaurant Company was a corporation duly organized and existing under the laws of Missouri, and engaged in the business of a Chinese chop suey restaurant at 813-815 Washington avenue, St. Louis, Missouri.

''That on June 22, 1922, Golden Eagle Restaurant Company filed in the United States District Court, for the Eastern Division of the Eastern Judicial District of Missouri, its voluntary petition for adjudication of bankruptcy; that such proceedings were had and done thereon; that on said day Golden Eagle Restaurant Company was, by the judgment and decree of said court duly adjudicated a bankrupt, and such judgment has ever since remained and still is in full force and effect; that on —— day of July, 1922, plaintiff was duly elected and chosen trustee of the estate of said bankrupt, filed his bond as such, which was duly approved, and he is now acting in that behalf and capacity; that plaintiff herein has leave of the Referee in Bankruptcy, before whom the administration of said estate is pending, to bring this action.

''Plaintiff further states that at all times herein mentioned Golden Eagle Restaurant Company was the owner and in possession of the following described personal property located at 813 and 815 Washington avenue, St. Louis, Missouri:

(Then follows itemization of various chattels)

''Plaintiff further states that on the 29th day of June, 1921, said Golden Eagle Restaurant Company executed an instrument in writing to defendant Johnson, in words and figures as follows:

'' 'This Memorandum of Agreement, made and entered into this thirtieth day of June, 1921, by and between the Golden Eagle Restaurant Company, a Missouri corporation, with its principal place of business located at 815 Washington avenue, in the city of St. Louis, Missouri, hereinafter called the party of the first part, and Albert W. Johnson, of the said city and State, hereinafter called the party of the second part.

'' 'Whereas, the party of the first part is the lessee of the first floor and basement of the property known as 813 and 815 Washington avenue, and which is now occupied by the party of the first part and operated by said party as a restaurant, and

'' 'Whereas, the party of the first part is the legal owner of all of the personal property now located in and upon the said 813 and 815 Washington avenue, which property may be more particularly described as follows, to-wit, stoves, ice-boxes, warming tables, meat

blocks, kitchen utensils, dining room tables, chairs, carpets, dishes, china and glassware, cash register, electric fans and fixtures, show cases, and

" 'Whereas, the party of the first part has this day made an application to the Boatmen's Bank of the city of St. Louis, Missouri, and

" 'Whereas, the said Boatmen's Bank had agreed this day to loan the said first party the sum of seven thousand dollars ($7000), upon the condition that the second party to this agreement sign a promissory note as co-maker and endorser with the party of the first part, the said note to be this day discounted by said bank, in the amount above stated, now,

" 'Therefore, the party of the first part does in consideration of the assumed liability, by the party of the second part for the payment of the note described herein, by these presents hereby does assign and transfer to the party of the second part all of the right, title and interest in and to the premises hereinbefore described, and now vested in the party of the first part, as a result of the hereinbefore mentioned lease, together with all of the hereinbefore described personal property, subject to the following conditions, to-wit:

" 'That the said title and interest herein conveyed to the party of the second part is to be reconveyed by the said party of the second part to the party of the first part at the time the party of the second part is discharged from all liability for the payment of the within described note, or any subsequent renewal note made in discharge of the within described note.

" 'It is further stipulated and agreed that in the event the within described note is not paid at maturity or within eight months thereafter, at the option of the party of the second part, the title and interest herein conveyed shall be absolute in the said party of the second part.

" 'It is further stipulated and agreed that the party of the first part is to remain in the possession of the premises known as 813 and 815 Washington avenue, and in addition to the payment of the rents reserved to the owners of the property as specified in the lease hereto annexed, occupied, agree to pay to the party of the second part, in consideration of being allowed to remain in possession of the said premises the sum of one cent, payable on the first day of each calendar month, after the date hereof.

" 'In Witness Whereof, the parties hereto have signed this agreement this 29th day of June, 1921, at the city of St. Louis, Missouri.

" 'GOLDEN EAGLE RESTAURANT COMPANY,
" ' (Signed) CHUNG JOKE, President,
" ' (Signed) CHU DONE, Secretary,
" ' (Signed) ALBERT JOHNSON, Party of the second part.'

"Plaintiff further alleges that there was fraud on the part of defendant Johnson in the procurement of the execution of said in-

strument in this, to-wit, that at the time of said execution said Johnson was attorney for the Golden Eagle Restaurant Company and employed by it to negotiate for the loan of seven thousand dollars ($7000) to it by Boatmen's Bank of St. Louis; that Chung Joke and Chu Done, who signed said instrument as president and secretary of said Golden Eagle Restaurant Company, were Chinese and unable at the time to read the English language, which defendant Johnson knew; that defendant Johnson willfully, knowingly and fraudulently represented to said Chinese that said instrument was a paper which the Boatmen's Bank required as a condition precedent to the lending of said seven thousand dollars ($7000), and willfully, knowingly and fraudulently failed and omitted to tell them that said instrument was in the nature of a chattel mortgage or bill of sale to Albert Johnson on the contents of the restaurant owned by said Golden Eagle Restaurant Company; that said Chung Joke and Chu Done relied upon said fraudulent representations and omissions and in reliance thereon and ignorant of the true contents of said instrument executed and delivered the same to Albert Johnson; that they would not have executed said instrument if they had known its true content.

"That after the execution of the foregoing instrument the Golden Eagle Restaurant Company remained in open, notorious and undisturbed possession of the aforesaid personal property; that open and notorious possession of the personal property embraced and included in said instrument of June 29, 1921, was never delivered to defendant Johnson; that said instrument of June 29, 1921, was not and never has been recorded or filed for record; that subsequent to the 29th day of June, 1921, and prior to its bankruptcy aforesaid, the Golden Eagle Restaurant Company incurred unsecured indebtedness to various and sundry creditors whose claims are still unpaid and whose claims have been filed with and allowed by the Referee in Bankruptcy before whom said bankrupt estate is being administered; that said instrument of June 29, 1921, was and is of no force and effect and fraudulent and void as to said subsequent creditors and as to plaintiff herein and conferred no rights in and to the property referred to therein upon defendant Johnson.

"That on or about October 30, 1922, all of the aforesaid personal property was converted into cash for the amount of three thousand dollars ($3000); that said cash was by and with the consent of plaintiff and defendant Johnson turned over to defendant Lehmann, who accepted the same and then and there agreed to hold it as stakeholder and to pay the same over to the plaintiff and defendant Johnson in the proportion that it should be thereafter determined they or either of them should be entitled thereto, that thereafter, acting upon the instructions of plaintiff and defendant Johnson, defendant Leh-

mann paid out to holders of duly recorded purchase money mortgages on the aforesaid personal property the amount of six hundred two dollars and fifty-seven cents ($602.57) there remaining in his hands the sum of twenty-three hundred ninety-nine dollars and forty-three cents ($2399.43), to which defendant Lehmann has and claims no interest and holds merely as stakeholder aforesaid, said sum being deposited in the Boatmen's Bank of St. Louis, Missouri, under the name of 'Sears Lehmann, Trustee.'

"That the bankrupt estate of Golden Eagle Restaurant Company. aforesaid is indebted to creditors in the extent of twenty-six thousand seven hundred six dollars and twenty cents ($26,706.20), and the plaintiff as trustee, has no funds whatsoever to pay said claims.

"Wherefore, plaintiff prays that defendant Albert W. Johnson be required to interplead and set out what right and interest, if any, he has in and to the aforesaid sum of money, to-wit, the sum of two thousand three hundred ninety-nine dollars and forty-three cents ($2399.43) deposited as aforesaid with and in the hands of defendant Sears Lehmann, and further prays that plaintiff be declared to be the owner of and entitled to the fund aforesaid, and that said fund together with accrued interest be ordered to be turned over to him; and for such other and further relief as to the court may seem meet and proper."

Considering plaintiff's third amended petition we note at the outset that it cannot, in the legal sense, be held to be a bill of interpleader, as such action must be filed by the party holding the property and who asserts no interest therein, and is threatened with suits by different persons claiming the same property, but no action of interpleader can be maintained by either of such claimants because each of the claimants, as against the holder of such property, has an adequate remedy at law. [Hathaway v. Foy et al., 40 Mo. 540.] But in exceptional cases where no adequate remedy at law is available, relief is afforded in equity in an action which in fact is in the nature of an interpleader.

We have already held in effect on the first appeal of this case that no action at law is available to either plaintiff or defendant Johnson; this because plaintiff and defendant Johnson entered into a written agreement whereby the contents of the restaurant, claimed by each of them, were sold by and with their consent, and under which agreement each of them joined in a bill of sale voluntarily transferring the property to the purchaser and under which agreement the proceeds of such sale were turned over to defendant Lehmann to be held until the rights of plaintiff and defendant Johnson, to the property in question or the proceeds thereof should be determined.

In light of that situation plaintiff and defendant Johnson each must be viewed as having deprived himself of whatever right either

310

might have had theretofore to an action at law to determine the disputed question of ownership to the said chattels.

The suggestion of the trial court in its memorandum opinion that plaintiff could proceed against defendant Johnson as for conversions in our view is not well taken since to constitute a conversion it is indispensable that the property be disposed of or converted without or against the consent of the person entitled thereto; whereas here the contents of the restaurant were disposed of with the consent of plaintiff.

Nor would an action for money had and received be available to plaintiff since concededly, under the facts, the proceeds of the sale of the chattels in question under plaintiff's and defendant's Johnson written agreement, are held in the hands of Lehmann, trustee.

Nor is a suit of replevin available to plaintiff because Johnson did not have possession of the contents of the restaurant or the proceeds of the sale thereof at the time this suit was instituted.

Plaintiff then has no adequate remedy at law, yet the said written agreement between plaintiff and defendant Johnson, and accepted by defendant Lehmann, clearly contemplates that a suit be filed by plaintiff against Johnson to determine the controversy, therefore plaintiff cannot be deprived of the sole and only action available to him, namely, a bill in equity. Therefore, as indicated on first appeal, we rule that plaintiff's action must be in equity. We are of the opinion and so hold that plaintiff's third amended petition pleads facts entitling him to equitable relief, and that too irrespective of the precise nature of the prayer therein, since the facts set out in the petition are sufficient to enable the court to see what the rights of the parties are. In this situation the bill will be retained and the proper relief granted although the bill cannot be viewed as a strict bill of interpleader. Petitions such as these are bills in equity which are in effect in the nature of suits of interpleader.

"Where the bill contains a general prayer for relief and alleges facts sufficient to enable the court to see what are the rights of the parties, the bill will be retained and the proper relief will be granted although the bill cannot be retained as a strict bill of interpleader." [33 Corpus Juris, sec. 63, p. 468; Haywood v. McDonald, 192 Fed. 890, 113 C. C. A. 368; Borchers v. Barkers, 143 Mo. App. 72, 122 S. W. 357, and also the second appeal in the same case, 158 Mo. App. 267, 138 S. W. 555; Lindsay v. Hotchkiss, 195 Mo. App. 563, 193 S. W. 902.

"Under our practice, if sufficient facts are stated to entitle the party to relief, the conclusions of law the pleader may draw from them, and the particular relief he may ask, may, if necessary, be disregarded and in such cases the court may grant any relief con-

sistent with the case made by plaintiff and embraced within the issues." [Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107.]

So too, it is a well-settled rule that a court of equity which has obtained jurisdiction of a controversy on any ground, or for any purpose, will retain such jurisdiction for the purpose of administering complete relief (Growney v. O'Connell, 245 Mo. 167, 198 S. W. 863; Waddle v. Frazier, 245 Mo. 391, 151 S. W. 87; Barnard v. Keathley, 230 Mo. 209, 130 S. W. 306), and doing entire justice with respect to the subject-matter. This doctrine rests upon the same principle which permits a court of equity to take jurisdiction in the first instance because the remedy at law is incomplete, or to avoid a multiplicity of suits. [School Dist. No. 1 v. Holt, 226 Mo. 406, 126 S. W. 462, 136 Amer. St. Rep. 651; 21 Corpus Juris, Equity, sec. 117, et seq.]

It follows from what we have said above that defendant Lehmann is properly made a party to the action and that there is no merit to his contention, here made, that he cannot be made a party for to do so would deprive him of his right to a trial by jury.

Holding plaintiff's petition to be a suit in equity it is here triable *de novo*. We have the entire record before us and since it is conceded by respondents in their brief that "facts in evidence are undisputed," it is our duty to determine from it what the rights and liabilities of the parties are and determine the decree that should be rendered. [Scott v. Cowen, 274 Mo. 398, 195 S. W. 732; Lademan v. Constr. Co. (Mo. App.), 297 S. W. 184; City of Rockport v. Mc-Michael (Mo. App.), 288 S. W. 785.]

An examination of the record discloses that the case was tried upon an agreed statement of facts in which no reference is made as to the allegation that the defendant Johnson perpetrated fraud upon the owners of the Golden Eagle Restaurant Company in obtaining the alleged bill of sale from them to him for the chattels in question, yet such agreed statement of facts in effect supports all the necessary material allegations set up in plaintiff's petition. As a part of the agreed statement of facts there is introduced into the record the following written agreement between defendant Johnson, plaintiff, and defendant Lehmann:

"Whereas, Albert W. Johnson claims to be in possession of and the pledgee and/or mortgagor and/or owner of certain personal property now located on the first floor and/or basement at 813-15 Washington avenue, St. Louis, Missouri, which property is described in a certain instrument dated June 29/30, 1921, by and between Golden Eagle Restaurant Company and Albert W. Johnson, and

"Whereas, Gustavus F. Bentrup is the duly elected trustee in bankruptcy of the estate of Golden Eagle Restaurant Company, bankrupt, and as such claims to be entitled to the possession and ownership of all and singular the personal property located in the afore-

described premises, including the property claimed by Albert W. Johnson, and is about to file a suit in the District Court of the United States or any other court against said Albert W. Johnson in order to establish said claim, and

"Whereas, the keeping of said property is attended with expense, and it is the desire of both parties hereto to convert said property into cash for the highest price obtainable, and

"Whereas, there are the following described, duly recorded and valid liens against certain of said property, by virtue of purchase-money chattel mortgages, to-wit: Mortgagee, Albert Peck & Co.. date of recording, May 5, 1921; balance due, approximately $302.96. Mortgagee, Harry L. Hussman & Co., date of recording, April 28, 1921; balance due, $138, with interest from April 22, 1921. Mortgagee, Majestic Manufacturing Company; date of recording, August 18, 1921; balance due, $130.

"Now, therefore, in consideration of the mutual covenants, terms and conditions to be performed by each of the parties hereto, it is hereby stipulated by and between Albert W. Johnson and Gustavus F. Bentrup, trustee in bankruptcy of the estate of the Golden Eagle Restaurant Company, as follows:

"1.  Each of said parties agrees to use his best efforts to dispose of said property for the highest cash price obtainable.

"2.  If either party receives a cash bid for said property he shall submit said bid to the other party hereto, and if said other party is not able to obtain a higher cash bid within twenty-four hours thereafter, said bid shall be accepted. If said other party within said twenty-four hours receives a higher cash bid, then said bid shall be similarly submitted to the other party, and the latter shall have twenty-four hours therefrom within which to secure or obtain a higher bid.

"3.  Both of the parties hereto agree to join in a bill of sale to the party to whom the property is sold, in accordance with the foregoing provision, conveying and transferring said property free and clear of the liens referred to in the 'Whereas' clause of this instrument.

"The money so received from the sale of said property shall be turned over to Mr. Sears Lehmann,. who shall deposit same in a special account. Out of the proceeds said Lehmann shall forthwith pay the balance due to Albert Peck & Co., Harry L. Hussman & Co.,. and Majestic Manufacturing Company—those are the three purchase-money mortgagees—under their respective lien claims, and the balance of said proceeds shall be held pending the determination of the litigation between said Bentrup, trustee in bankruptcy aforesaid, and said Johnson, to be paid over in accordance with the following instructions:

"A. If in said suit there shall be a judgment declaring that either the complainant or defendant herein is the owner of all and singular the property involved in said litigation, then in that event the balance of said proceeds shall be turned over to the party in whose favor the judgment is rendered.

"B. If there shall be a judgment declaring that the complainant therein is entitled to certain of the property, and that the defendant is entitled to certain of said property, then the proceeds shall be divided and paid over in the proportions that the appraised value of the property awarded to each of the parties herein shall bear to the total appraised value.

"The appraisal referred to, and a list of the property covered by this stipulation, is contained in the appraisal filed or to be filed by said Bentrup, trustee of the Golden Eagle Restaurant Company, bankrupt, in the office of W. D. Coles, Referee in Bankruptcy, with the records of the said Golden Eagle Restaurant Company, bankrupt.

"In witness whereof we have hereunto set our hands this 5th day of September, 1922.

"(Signed) ALBERT W. JOHNSON,
"(Signed) GUSTAVUS F. BENTRUP.
"St. Louis., Mo. ......1922.

"I, the undersigned, agree to perform all and singular the terms and conditions to be performed by me under the foregoing stipulation.

"(Signed) SEARS LEHMANN."

In addition to such agreed statement of facts there was added the testimony of defendant Johnson, adduced as a witness by plaintiff, to the effect that he had personally taken possession of the chattels in question in the premises theretofore occupied by the said Golden Eagle Restaurant Company on or about February 1, 1922, and that at that time he had notified the various creditors of said restaurant company of his ownership and his possession of the chattels and that they had remained in his possession continuously up until the time the chattels were sold by consent of himself and plaintiff, and the proceeds of such sale placed in the hands of defendant Lehmann.

But the so-called bill of sale of June 29, 1921, was never recorded and the restaurant company admittedly remained in possession of the chattels until February 1, 1922, and it is admitted that between said June 29, 1921 and said February 1, 1922, the restaurant company incurred indebtedness to sundry creditors, which claims have never been paid but have been filed and allowed as claims by the Referee in Bankruptcy in the bankrupt estate of said restaurant company.

We must view the so-called bill of sale in light of section 2256, Revised Statutes of Missouri 1919, which provides that no mort-

gage or deed of trust of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgage or trust property be delivered to and retained by the mortgagee or trustee or *cestui que trust,* or unless the mortgage or deed of trust be acknowledged or proved and recorded. It is apparent from a reading of the so-called bill of sale that it was entered into to secure or indemnify defendant Johnson, and is in effect a chattel mortgage, and therefore falls within the terms of section 2256, supra. [Puryear & Meyer Gro. Co. v. Cardwell Bank (Mo. App.), 4 S. W. (2d) 489; Albert v. Van Frank, 87 Mo. App. 511; Cummings v. Badger Lbr. Co., 130 Mo. App. 557, 109 S. W. 68.]

Our courts have specifically construed this section 2256, supra, to mean that an unrecorded mortgage of personal property is void as against creditors whose claims arise subsequent to the execution of the mortgage and that the fact that the mortgagee later takes open and notorious possession of the mortgaged chattels, does not cure this invalidity. [Williams v. Kirk, 68 Mo. App. 457; Keet & Roundtree Dry Goods Co. v. Brown, 73 Mo. App. 245; Harrison v. Min. Co., 95 Mo. App. 80, 68 S. W. 963.] In the last-mentioned case, adverting to the said section of the statute, it was held that a mortgage withheld from record until after a subsequent creditor had extended credit to a mortgagor was void as to such creditor and that it was not necessary for such subsequent creditor to show affirmatively that he was deceived or mislead by the failure to so record, for the reason that the statute makes no such condition, and that it will be so assumed. It is the fact of not recording which avoids the deed.

As far back as the case of Bevans v. Bolton, 31 Mo. 437, it was held that an unrecorded mortgage of personal property is absolutely invalid against a creditor or purchaser if it is not recorded, although such creditor or purchaser may have had actual knowledge of it.

To the same effect is Collins v. Wilhoit, 108 Mo. 451, 18 S. W. 839.

We therefore rule that said bill of sale was given by the restaurant company to defendant Johnson to secure him against loss by reason of said Johnson having become co-maker with and endorser upon the $7000 note of the restaurant company to the bank, and that the bill of sale is a chattel mortgage which not having been recorded, and possession of the chattels not having been taken, is void as to the admitted subsequent creditors under the statute.

Nor can there be any question but that the trustee in bankruptcy, as to unrecorded liens on the property of a bankrupt under this section of our statutes, has the same rights as each or any creditor of the bankrupt had prior to the bankruptcy. It is provided in section 67-A of the Bankruptcy Act of 1898 that "claims, which for want of recording or for other reasons, would not have been valid liens as against the claim of the creditor of the bankrupt, shall not be valid

liens against his estate.'' In this connection it is to be noted that said section 67-A makes no reference to the four months' period prior to bankruptcy as do several other sections defining the position of a trustee in bankruptcy. In light of this section then liens which would have been void for want of recording as under our said statute as against any creditor of the bankrupt, are likewise void as against the trustee irrespective of the time when such secret liens were created.

In Stewart v. Asbury, 199 Mo. App. 123, 201 S. W. 949, in the course of the opinion it is held that it has long been the law of this State that a creditor who extends his credit to his debtor at a time when there is a chattel mortgage or conditional contract creating a secret lien on property in the hands of the debtor ostensibly his, cannot be defeated by the mortgagee or vendor taking possession thereof under the mortgage or conditional contract, or filing the same for record. [Keet & Roundtree Dry Goods Co. v. Brown, supra; Landis v. McDonald, 88 Mo. App. 335; Williams v. Kirk, supra; Blake v. Meadows, 225 Mo. 1, 123 S. W. 868; Harrison & Calhoun v. So. Carthage Min. Co., 95 Mo. App. 80, 66 S. W. 963; Hardin v. Bank, 177 Mo. App. 44, 163 S. W. 306; Studebaker Bros. Mfg. Co. v. Carriage Co., 152 Mo. App. 401, 133 S. W. 412; Hundley & McDonald Dry Goods Co. v. Bank, 72 Mo. App. 226; Pew v. Price, 251 Mo. 614, 156 S. W. 338; In re Wade, 26 A. B. R. 169, 185 Fed. 664; First Nat'l Bank of Buchanan Co., St. Joseph, v. Connett, 142 Fed. 33; McElvain v. Hardesty, 169 Fed. 31; In re Bothe, 173 Fed. 597.] There is no question but that the Federal Bankruptcy Act empowers a trustee to enforce the rights of creditors of the bankrupt to set aside liens which are void under the State law for want of recording or for other reasons.

In re Bothe, 173 Fed. 597, a case in which the bankrupt executed a chattel mortgage on June 2, 1906, the property remaining in his possession, and the mortgage being recorded June 4, 1907, and the bankruptcy petition not being filed until more than four months later, namely, on January 25, 1908, the trustee in bankruptcy brought suit against the mortgagee who had obtained possession of the chattels. In the course of the opinion it was held:

''The mortgage was recorded more than four months prior to the adjudication in bankruptcy and, therefore, so far as the Bankruptcy Act was concerned, it created a valid preferential right over all other creditors of the bankrupt. But by the law of Missouri (section 3404, Rev. St. 1899 [Ann. St. 1906, p. 1936]), where the mortgage was made, it became and was invalid against any other person than the parties thereto until it was recorded. No question of lawful or unlawful preference within the contemplation of the Bankruptcy Act is now present. The sole inquiry is whether the property in question, prior to the bankruptcy proceedings, belonged to the mortgagee

or to the creditors of the bankrupt who extended credit to him after the execution of the mortgage and before it was recorded.''

In light of the record before us and what we have said above, in our view, plaintiff, as trustee in bankruptcy as against defendant Johnson, must be held to have been the owner of the chattels in question and therefore that under the terms of the written agreement between plaintiff and defendants, whereby said chattels were sold and the ultimate proceeds thereof held in the hands of Lehmann, as trustee or ''stakeholder,'' said plaintiff is entitled also to the balance of the proceeds of such sale held by Lehmann, trustee.

Accordingly the judgment is reversed and the cause remanded with directions to the trial court to enter a decree to the effect that the ownership of the chattels in question is in plaintiff as against defendant Johnson, and that plaintiff is entitled to the proceeds of the sale of the chattels now held by defendant Lehmann, and said decree shall further direct defendant Lehmann to pay said money in his hands into the court in conformity with the judgment, and shall thereupon stand discharged.

*Nipper, J.,* concurs; *Haid, P. J.,* not sitting.